**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| Chelsea James, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Smarter Contact, Inc., and Smarter Contact Holdings LLC,<br><br>Defendants. | CASE NO<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## Nature of this Action

1. Chelsea James ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Smarter Contact, Inc. and Smarter Contact Holdings LLC (collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2. In short, Defendants operate a large-scale telemarketing platform whose purpose is, fundamentally, to violate the TCPA, and aid their real estate investor clients in violating the TCPA, by providing an all-inclusive platform that locates consumer leads to deliver text messages to by scouring public record databases, drafting text messages to send to those consumers, and physically sending those text messages.

3. Thus, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing text message to residential telephone numbers

registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

4. Moreover, as explained below, Defendants deliver these text messages while purporting to be other companies, and therefore, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

**Parties**

5. Plaintiff is a natural person who at all relevant times resided in Glendale, Arizona.

6. Smarter Contact, Inc., and is a Delaware corporation with its headquarters in Tampa, Florida.

7. Smarter Contact Holding LLC is a Florida limited liability company with its headquarters in Tampa, Florida.

8. Upon information and good faith belief, Smarter Contact, Inc. is the operations-focused face of "Smarter Contact," whereas Smarter Contact Holdings LLC is a holding company for the "Smarter Contact" enterprise, and the extent of each entity's individual involvement in the "Smarter Contact" telemarketing enterprise and decision-making will be further explored in discovery.

## Jurisdiction and Venue

9. This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

10. Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) as Defendants are based in this district, and a significant portion of the events giving rise to this action occurred in this district.

11. In particular, Defendants directed their text messages to Plaintiff's telephone from this district.

## Factual Allegations

12. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number— (602) 366-XXXX.

13. Plaintiff uses her cellular telephone as her personal residential telephone number.

14. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC Registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

15. Plaintiff registered her cellular telephone number with the DNC Registry on July 22, 2008, and has maintained that registration through the present date.

16. Starting in July of 2023, Plaintiff received numerous text messages from a rotating series of phone numbers, seeking to solicit Plaintiff to use "AZ Homebuyers," or "Joe Homebuyer" to engage in a real estate transaction:










17. Plaintiff did not recognize the senders, is (and was) not selling her home, and was not looking to sell her home.

18. After receiving multiple text messages from different telephone numbers, Plaintiff responded to the sender solely to identify the entity responsible for sending those messages.

19. Those websites disclosed that the "Joe Homebuyer" entity paired numerous services with their offers to purchase properties from consumers.

20. Implicit among these service offerings was the arranging of title, escrow, preparing paperwork, and all other ancillary services associated with the purchase or sale of a home, including the preparation and handling of all purchase and sale-related

paperwork for sellers,[1] arranging for title, escrow, and closing services,[2] and even providing moving and transportation for sellers.[3]

21. Because Plaintiff did not consent to receive these text messages, and because Plaintiff's telephone number was registered to the DNC Registry, Plaintiff filed suit against the entities identified in these text messages, in the matter captioned *James v. Utah Sell Now, LLC d/b/a Joe Homebuyer et al*, Case No. 2:24-cv-00540-SPL (D. Ariz.).[4]

22. However, discovery in that matter revealed that the "Joe Homebuyer" enterprise had nothing to do with the phone numbers at issue, did not use Defendants' services, and did not authorize Defendants to use its name or telemarket on its behalf.

23. Moreover, discovery in that matter, including subpoenas to the owners of the telephone numbers that delivered the text messages at-issue, revealed that Defendants' enterprise was the subscriber and user of those telephone numbers during

---

[1] Https://joehomebuyer.com/what-we-do/ (last visited June 19, 2025) ("You won't have to handle paperwork accompanied by the waiting, wondering, and hoping.")

[2] Https://www.joehomebuyerarizonagroup.com/ (last visited June 19, 2025) ("We handle 100% of everything, the paperwork, title, closing and more!").

[3] Https://joehomebuyerfranchising.com/faq/ (last visited June 19, 2025) (they are "different from a real estate agent" because "[w]hether [sellers] need help with *moving logistics or transporting vehicles*, we will do everything we can to make the transition run smoothly!") (emphasis added).

[4] Notably, Plaintiff issued a subpoena to Smarter Contact, Inc. during the course of discovery in the above-referenced matter. However, Smarter Contact, Inc. refused to respond to the subpoena despite Smarter Contact, Inc. being duly noticed and served with that subpoena.

the relevant time period. *See* Exhibit A (subpoena response).

24. As a result, Plaintiff dismissed that matter without prejudice.

25. Plaintiff, through her counsel, investigated the nature of Defendants' business, and discovered that Defendants are, in essence, running a large-scale telemarketing platform that premises its core operations on intentional violations of the TCPA.

26. In Defendants' own words, it is an "[a]n all-in-one text and voice communications platform" that is "[n]ow powered by AI" and used to "[b]uild relationships, engage leads, close deals, and achieve your earning potential up to 10x faster."[5]

27. As explained below, Defendants (1) identify persons to send telemarketing text messages to irrespective of any efforts to obtain their prior express written consent; (2) skiptrace contact information for those telephone numbers; (3) draft the content of the text messages that will be sent to those persons; and (4) actually send the text messages.

28. In other words, Defendants seek to sell "text marketing platforms" to real estate businesses, while also going *far* beyond offering a mere dialing platform or customer management platform, crossing the line into actually drafting text messages, sending those text messages, *and even sourcing "leads" by identifying potential consumers and providing the suspected contact information for those consumers for Defendants or their*

---

[5] https://smartercontact.com/pricing/ (last visited June 19, 2025).

*clients to deliver text messages to*, regardless of whether those "leads" provided consent.

29. In one webinar for its clients, Josh Sanchez, CEO of Smarter Contact, presented a video on how to increase the scale of real estate telemarketing campaigns for its clients:[6]




30. Notably, in that video, Mr. Sanchez provided specific examples of how to target homeowners in the Phoenix area—where Plaintiff resides:

6 https://event.webinarjam.com/replay/72/gpzxoizgs7yhy2cr0m (last visited June 19, 2025).




31. Defendants enthusiastically promote that they skiptrace the contact information of suspected homeowners for subscribers, which itself presupposes a lack of consent in their communications to those persons.[7]

32. Defendants also provide services to automate the delivery of text messages via "drip campaigns" where text messages are sent every 24 hours to the same contact.[8]

---

[7] https://smartercontact.com/launch-control-vs-smarter-contact/ (last visited June 19, 2025); *see also* https://www.loom.com/share/6119c28722614b19a8691f8156f0e548?sid=83f93d52-62a8-499e-9dfb-3e8e3c01c471 at 7:17-8:40 (describing skiptracing service and demonstrating it) (last visited June 19, 2025).

[8] https://smartercontact.com/launch-control-vs-smarter-contact/ (last visited June 19, 2025); https://www.loom.com/share/6119c28722614b19a8691f8156f0e548?sid=83f93d52-62a8-499e-9dfb-3e8e3c01c471 at 7:17-8:40 ("So, an ideal example for a drip sequence you could do one for example, which is follow up on Monday, follow up on Tuesday,

33. Defendants also draft the text messages themselves, through the use of their "Smarter Contact AI template generator," which purports to generate 60 different templates of messages per day through an automated "AI-powered system."[9]

34. Most critically, Defendants also engage in direct telemarketing for their customers through "[d]one for you deal generation" where Defendants promise to procure for investors "40-50 leads handed to you each month" via Defendants' cold call telemarketing campaigns.[10]

35. In Defendants' own words, it offers the following to its subscribers:[11]

---

follow up on Wednesday, follow up on one week, two weeks, four weeks, six weeks, eight weeks, right?"); https://smartercontact.com/sms-automation/ ("From rule-triggered messaging to easy-to-create workflows and SMS scheduling, with little to no manual interventions. Smarter Contact takes care of everything.") (last visited June 23, 2025).

9 https://support.smartercontact.com/what-is-smarter-contact-ai-template-generator (last visited June 19, 2025); https://smartercontact.com/launch-control-vs-smarter-contact/ (last visited June 19, 2025).

10 https://smartercontact.com/managed-plans/ (last visited June 19, 2025).

11 *Id.*




36. Depending on the user's subscription tier, the scale of Defendants' telemarketing grows tremendously:

| | Elite Premium<br>billed quarterly<br>Talk to sales | Elite Business<br>billed quarterly<br>Talk to sales | Elite First<br>billed quarterly<br>Talk to sales | Most Popular<br>Elite Platinum<br>billed quarterly<br>Talk to sales |
|---|---|---|---|---|
| Leads ⓘ | 20-30+ ⓘ | 40-50+ ⓘ | 80-100+ ⓘ | 160-200+ ⓘ |
| Deal Potential ⓘ | 1-3+ ⓘ | 2-5+ ⓘ | 4-10+ ⓘ | 8-20+ ⓘ |
| ROI Potential ⓘ | $15-45k+ ⓘ | $30-75k+ ⓘ | $60-150k+ ⓘ | $120-300k+ ⓘ |
| Contact Management ⓘ | Up to 10,000 ⓘ | Up to 25,000 ⓘ | Up to 50,000 ⓘ | Up to 100,000 ⓘ |
| Markets ⓘ | 1 | 2 | 4 | 8 |
| Account Manager ⓘ | ✓ | ✓ | 2 | 4 |
| Project Manager ⓘ | ✓ | ✓ | ✓ | ✓ |
| Customer Success Manager ⓘ | ✓ | ✓ | ✓ | ✓ |
| Copywriting Specialist ⓘ | ✓ | ✓ | ✓ | ✓ |
| Customer Support Specialist ⓘ | ✓ | ✓ | ✓ | ✓ |

37. Moreover, Defendants acknowledge that they draft and prepare the

content of the text messages they send, noting that "[t]he Service utilizes artificial intelligence ('AI') services provided by third-party providers to enhance certain features such as message template generation, automated communications, and other capabilities ('AI Features'). By using these AI Features, you acknowledge and agree to specific terms and conditions. You authorize the Company to process and transmit message templates, contact information, and message content to third-party AI service providers for the purpose of generating and optimizing communications."[12]

38. Defendants even tout that they can eliminate opt-out language to prevent text message recipients from being able to opt out of communications sent by Defendants:[13]

---

[12] https://smartercontact.com/terms-and-conditions (last visited June 19, 2025).

[13] https://smartercontact.com/pricing/ (last visited June 19, 2025).

| Compare Plans<br>Need help choosing the best plan for you?<br>Chat with our experts | Starter<br>$ 199/mo<br>billed quarterly<br>Start free trial | Pro<br>$ 399/mo<br>billed quarterly<br>Start free trial | Elite<br>$ 499/mo<br>billed quarterly<br>Start free trial |
|---|---|---|---|
| Voice Messaging ⓘ | ✓ | ✓ | ✓ |
| Keyword Campaigns ⓘ | ✓ | ✓ | ✓ |
| Voice Campaigns ⓘ Beta | ✓ | ✓ | ✓ |
| AI-Powered Messaging ⓘ Beta | ✓ | ✓ | ✓ |
| Drip Campaigns ⓘ | — | ✓ | ✓ |
| Ringless Voicemail Campaigns ⓘ | — | ✓ | ✓ |
| Campaign Scheduling ⓘ | — | ✓ | ✓ |
| Campaign Throttling ⓘ | — | ✓ | ✓ |
| CRM Integrations ⓘ | — | ✓ | ✓ |
| Opt-Out Removal ⓘ | — | — | ✓ |
| Mobile Text Alerts ⓘ | — | — | ✓ |
| Additional Users ⓘ | — | — | ✓ |
| Support ⓘ | Standard ⓘ | Priority ⓘ | VIP ⓘ |
| Onboarding ⓘ | Group ⓘ | Personalized ⓘ | Dedicated ⓘ |

Remove opt-out language in your initial message to deliver more personalized messages and increase your character limit.

39. The purpose of the text messages at issue was to advertise and to market Defendants' business or services, or the business or services of Defendants' clients, who, upon information and belief, are primarily real estate wholesalers.[14]

[14] Generally speaking, real estate wholesaling is a strategy in which a wholesaler seeks to (1) persuade a homeowner to sell their home to the wholesaler at a substantial discount below fair market value, in exchange for a suite of services to ease the sale, then (2) prior to completing the purchase, remarket the property to third-party purchasers or investors, to (3) assign or sell the contract to that investor for a substantial premium, thereby allowing the investor to step into wholesaler's shoes and acquire the house instead, with the difference in price solely allocated to the wholesaler as profit, instead of the homeowner.

40. Specifically, as a text messaging platform that telemarkets for real estate firms, Defendants sought to solicit Plaintiff to engage in real estate transactions with Defendants' affiliates.

41. And, to the extent that Defendants argue that the underlying text messages do not qualify as "telemarketing" or "solicitation," Defendants would be mistaken, because:

a) The website in the underlying text messages, https://joehomebuyer.com, explains that the Joe Homebuyer-branded entities seek to purchase and resell residential real estate;

b) The website also advertises that the Joe Homebuyer-branded entities pair numerous services with their offers to purchase properties from consumers;

c) Consumers such as Plaintiff would pay an effective fee to these entities for their numerous ancillary services through the payment of a reduced purchase price to those consumers for their home;

d) Defendants, along with these real estate investors and agents, sought to supplant the role of a traditional real estate agent while providing the same services as a real estate agent, and in exchange for doing so, are compensated obtaining a homeowner's property at a reduced price, and

thereafter selling it at an inflated price;[15]

e) These real estate investors and agents would be (and, upon belief and information, are) compensated for their services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

42. Thus, given 1) that Defendants controlled, in large part, the content of the text messages sent by their clients; 2) Defendants provided consumer telephone numbers as "leads" to be sold to their clients; 3) Defendants physically sent the text messages at issue; 4) Defendants coached and assisted clients in contacting consumers for telemarketing purposes while knowing that those consumers did not provide prior express written consent for those messages; 5) that Plaintiff's subpoenas identified Defendants as the owner of the telephone numbers at-issue during the relevant time period that the text messages were sent; 6) the Joe Homebuyer-branded entities deny, via sworn declaration, any affiliation or association with Defendants, suggesting that Defendants masquerade as other companies to facilitate their telemarketing; and 7) that Defendants *built their entire business around creating a platform for cold-call telemarketing to consumers for real estate services*, Defendants are liable for each and every text message they sent, for their benefit or the benefit of their clients, to consumers

---

[15] Defendants also post guides on how wholesalers can grow their real estate cash buyer lists, i.e. the end-purchasers of the wholesaling transactions discussed *supra* n. 14. https://smartercontact.com/how-to-find-cash-buyers-for-wholesaling/ (last visited June 23, 2025).

who did not provide prior express written consent to receive those messages.

43. Moreover, because Defendants send text messages while purporting to do so on behalf of other entities, Defendants are intentionally obfuscating their identity when they send text messages to consumers' telephone numbers.

44. Plaintiff is not, and was not, interested in Defendants' services or marketing, nor was she interested in the Defendants' client's services or marketing.

45. Plaintiff did not previously contact or transact with Defendants or the Joe Homebuyer-branded entities.

46. Upon information and good faith belief, Defendants sent, or caused to be sent, over twenty advertisement or telemarketing text messages to Plaintiff's cellular telephone between 2023 and the present, both in the guise of Joe Homebuyer-branded marketing, and Defendants' other clients' marketing.

47. Plaintiff did not give Defendants prior express consent or prior express written consent to send text messages to her cellular telephone number.

48. Defendants sent the text messages at issue for non-emergency purposes.

49. Upon information and good faith belief, Defendants sent the text messages at issue voluntarily.

50. Defendants continue to operate their Smarter Contact service through the present day.

51. Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages to her cellular telephone number.

52. Plaintiff suffered actual harm as a result of the text messages at issue in

that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

53. Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

**Class Action Allegations**

54. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes (the "Classes"):[16]

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom Smarter Contact, Inc. or Smarter Contact Holdings LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Smarter Contact, Inc.'s or Smarter Contact Holdings LLC's, or their business partners' goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Smarter Contact, Inc. or Smarter Contact Holdings LLC delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

> All persons and entities throughout the United States (1) to whom Smarter Contact, Inc. or Smarter Contact Holdings LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Smarter Contact, Inc.'s or Smarter Contact Holdings LLC's, or their business partners' goods or services, (2) where the subject text messages did not state the name of the individual caller, the name of Smarter Contact, Inc. or Smarter Contact Holdings LLC, or their

[16] The "Federal Do-Not-Call Registry Class" and the "Sender Identification Class" are collectively referred to as the "Classes."

> business partner affiliate(s), and a telephone number or address at which Smarter Contact, Inc. or Smarter Contact Holdings LLC, or their business partner affiliate(s), may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

55. Excluded from the Classes are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

56. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

57. The exact number of members of the Classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

58. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

59. In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Classes.

60. Plaintiff's claims are typical of the claims of the members of the Classes.

61. As they did for all members of the Federal Do-Not-Call Registry Class, Defendants delivered solicitation text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her telephone number with the DNC Registry.

62. As they did for all members of the Sender Identification Class, Defendants delivered solicitation text messages to Plaintiff's telephone number where

the subject text messages did not state the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted.

63. Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

64. Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

65. Plaintiff suffered the same injuries as the members of the Classes.

66. Plaintiff will fairly and adequately protect the interests of the members of the Classes.

67. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

68. Plaintiff will vigorously pursue the claims of the members of the Classes.

69. Plaintiff has retained counsel experienced and competent in class action litigation.

70. Plaintiff's counsel will vigorously pursue this matter.

71. Plaintiff's counsel will assert, protect, and otherwise represent the members of the Classes.

72. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

73. Issues of law and fact common to all members of the Classes include:

a. Defendants' conduct, pattern, and practice as it pertains to

delivering advertisement and telemarketing text messages;

b. For the Federal Do-Not-Call Registry Class, Defendants' practice of delivering text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

c. For the Sender Identification Class, Defendants' practice of delivering text messages, for solicitation purposes, without identifying the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted;

d. Defendants' violations of the TCPA; and

e. The availability of statutory penalties.

74. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

75. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

76. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

77. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

78. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

79. The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

80. The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

81. There will be no extraordinary difficulty in the management of this action as a class action.

82. Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

83. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-82.

84. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946,

954 (9th Cir. 2009).

85. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

86. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

87. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

88. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Federal Do-Not-Call Registry Class who registered their respective residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

89. Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and the Federal Do-Not-Call Registry Class, more

than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

90. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

91. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-82.

92. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

93. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

94. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

95. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

96. Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, solicitations to telephone subscribers such as Plaintiff and the Sender Identification Class while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

97. Defendants therefore violated 47 U.S.C. § 227(c)(5) because of their violations of 47 C.F.R. § 64.1200(d)(4).

98. Plaintiff and the Sender Identification Class were harmed by Defendants' omission of this required information because they were (1) frustrated by their inability to identify the entity responsible for the solicitation communications at issue; (2) required to spend time attempting to identify the entity responsible for sending the text messages at issue; and (3) required to spend additional time investigating methods to get Defendants to stop delivering those messages.

99. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiff and the Sender Identification Class are entitled to

damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiff as a class representative of the proposed Classes under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e. Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f. Awarding Plaintiff and the members of the Classes damages under 47 U.S.C. § 227(c)(5)(B);

g. Awarding Plaintiff and the members of the Classes treble damages under 47 U.S.C. § 227(c)(5)(C);

h. Awarding Plaintiff and the members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiff and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: June 26, 2025.

*/s/ Alex D. Kruzyk*
Alex D. Kruzyk
akruzyk@pkglegal.com
Bryan A. Giribaldo
bgiribaldo@pkglegal.com
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
Fax: (877) 453-8003

Logan A. Pardell
lpardell@pkglegal.com
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Tele: (561) 726-8444
Fax: (877) 453-8003

*Counsel for Plaintiff and the proposed classes*